**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THREE COURT MASTER, L.P. | Civil Action No. 1:25-cv-07679-MMG |
| Plaintiff, | |
| vs. | Hon. Margaret M. Garnett, U.S.D.J. |
| UBS AG, STAMFORD BRANCH | ~~[PROPOSED]~~ **PROTOCOL ORDER FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| Defendant. | |

Plaintiff and Defendants (collectively, the "Parties," and individually, a "Party") submit this Protocol for Discovery of Electronically Stored Information (hereinafter "Order") to govern discovery of electronically stored information in this action. This Order will serve as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

**A.    Definitions**

1.      "**Requesting Party**" means and refers to the Party that serves a request for the production of Documents.

2.      "**Producing Party**" means and refers to the Party upon whom a request for the production of Documents is served.

3.      "**Document**" or "**Documents**" means any information or item discoverable pursuant to Federal Rule of Civil Procedure 34(a)(1).

4.      "**Document Family**" means a Document and all other Documents that are attached to it, the Document to which other Documents are attached being the "Parent," and Documents that are attached to the Parent being the "Children."

5.      "**Custodian**" means the individual from whose files the Document originated, or in the case of a Document that originated from a document source not associated with the files

of one particular individual, the general source of that Document.

6.      **"Electronically Stored Information"** or **"ESI,"** means any Document or Documents stored or transmitted in electronic form.

7.      **"Email"** means electronic messages sent using electronic mail protocols (*e.g.*, SMTP).

8.      **"E-Message"** means a non-Email form of electronic messaging, including text and group messaging (*e.g.*, Slack, Cisco Jabber, Microsoft Teams, Instant Bloomberg, Google Chat, SMS, MMS, iMessage, Microsoft Lync, WhatsApp, WeChat).

9.      **"E-Document"** means a word processing, spreadsheet, presentation or other file (other than Email or E-Messages) stored or transmitted in electronic form.

10.      **"Hard-Copy Document"** means any Document existing in paper form at the time of collection.

11.      **"Image Format"** means an individual page or pages of a Document that has been converted into a static format. Documents produced as TIFFs are produced in Image Format.

12.      **"Native Format"** means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the Native Format of an Excel workbook is a .xls or .xlsx file.

13.      **"Metadata"** means information about a Document aside from the contents of the Document itself.

14.      **"Optical Character Recognition"** or **"OCR"** means the process of capturing text from an image for the purpose of creating a parallel text file that can be associated with the image and searched in a database.

15.      **"Hash Value"** is a unique value for a given set of data, similar to a digital fingerprint, that is calculated by a mathematical algorithm and represents the binary content of the data to assist in subsequently ensuring that data has not been modified.

16.      **"Confidentiality Designation"** means the confidentiality designation affixed

to Documents as defined by, and subject to, the Confidentiality Agreement and Protective Order, or any applicable agreement or stipulation, entered in this matter.

17.     **"Searchable Text"** means the text extracted directly from a native Document or generated using OCR from any Document that allows the Document to be electronically searched.

18.     **"Load Files"** means electronic files provided with a production set of Documents and images that indicate where individual pages or files belong together as Documents or Document Families used to load that production set into a Requesting Party's Document review platform.

**B.     General**

1.     The Parties commit to cooperate in good faith throughout the pendency of the e-discovery process.

2.     Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing. The Parties will meet and confer to resolve any dispute regarding the application of this Order before seeking Court intervention.

**C.     Preservation**

1.     To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties represent that these data sources are not reasonably accessible because of undue burden or cost, and ESI from these sources will be preserved only to the extent it is ordinarily preserved in the normal course of business. These sources need not be collected, searched, reviewed, or produced, except for good cause shown:

a.     backup systems and/or tapes used for disaster recovery purposes only or that are substantively duplicative of data that is more accessible elsewhere;

b.     systems, server, and network logs;

c.     systems no longer in use that cannot be accessed without undue effort;

d.    automatically saved interim versions of Documents and Emails;

e.    deleted, slack, fragmented, or other data accessible only by forensics;

f.    random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

g.    on-line access data such as temporary internet files, history, cache, and cookies;

h.    dynamic fields of databases or log files that are not retained in the usual course of business;

i.    voice messages, except for voicemail that is converted to text and forwarded to the recipient's email account; and

j.    Encrypted data/password protected files, where the key or password cannot be ascertained absent extraordinary efforts.

**D.    Search**

1.    The Parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

2.    As part of discovery, the Parties agree that they may use keyword searching and/or advanced analytics (i.e., technology-assisted-review ("TAR"), Active Learning, etc.) to help to identify responsive data. The Parties agree to allow sufficient transparency for the Parties to be confident in the process and results and with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set for this matter. Any Party utilizing TAR agrees to disclose information sufficient for the opposing Party to assess the adequacy of the TAR model, including project validation sample sizes, elusion rate, and recall rates.

3.      The Parties agree that they will discuss and strive to agree upon appropriate data sources and custodians each Party believes will possess responsive information.

4.      The Parties agree that, notwithstanding any conferral, responding Parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own ESI and will execute any reasonable search methodology including but not limited to TAR tools to produce documents in this litigation. To the extent the Requesting Party believes a methodology is inadequate, the Requesting Party can move the Court for relief, after conferring with the Producing Party in an attempt to resolve the issue without Court intervention.

**E.      Processing Specifications**

1.      De-Duplication. The Producing Party shall take reasonable steps to remove Documents identified as duplicative based on MD5 or SHA-1 hash values of the full text of the parent-level Documents, including Email header information, notes, and annotations. Documents within a Document Family shall be considered duplicative of other Documents only if all Documents within each Document's Document Family are duplicative. An Email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an Email that does not include content in the BCC or other blind copy field, even if all remaining content in the Email is identical. Exact duplicates of Documents retrieved from different Custodians may be considered duplicative despite originating from a different Custodian. A Producing Party shall not use other means to remove duplicate Documents from production (*e.g.*, manual review). The Parties shall timely meet and confer regarding any disputes regarding the de-duplication process. The Producing Party shall provide a Metadata field "ALLCUSTODIANS" for all Documents, listing the Custodian of the Document if available and all Custodians that possessed

or held any duplicate of the Document that was removed through de-duplication. Such de-duplicated documents shall be deemed produced from the files of each such identified Custodian for all purposes in this litigation, including for use at deposition and trial. A Producing Party shall use a uniform description of a particular Custodian across productions. In the event there is no singular Custodian available, the Producing Party shall label the Custodian as the general source of the information. The other Metadata fields, including the To/From/Cc fields, provide the information as to which other Custodians are involved with which documents and communications.

2.      <u>Email Threading</u>. The Parties are permitted to use industry standard Email threading tools to remove Emails and their attachments where the contents of the Email and its attachments are wholly included within another Email and its attachments that are not removed.

3.      <u>System Files/Application Executable Files</u>. Each Party will use reasonable efforts to filter out common system files and application executable files. Non-user generated files may be removed from review and production using the list of non-user generated files maintained by the National Institute of Standards and Technology (NIST). Additional culling of system files based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), temporary files (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), and Program Installers. Parties need not produce non-human readable E-Documents, except upon a showing

of good cause by the Requesting Party.

4.    Embedded Objects. Embedded objects or files (e.g., Excel spreadsheets, Word documents, audio and video files, etc.), shall be extracted, searched and produced consistent with other ESI. Non-substantive embedded files (e.g., MS Office embedded images, email in-line images, logos, etc.), need not be extracted. All extracted embedded files produced shall be produced subject to the same requirements set forth in this Protocol. For production purposes, embedded files shall be identified as attachments to the parent document in which the file was embedded, and load files for such embedded files shall refer to the parent document in which the file was embedded."

5.    Hyperlinked Files. A Producing Party is not required to produce hyperlinked files as part of the same Document Family as the Document containing the hyperlink, provided however, that upon reasonable and particularized request, a Producing Party will produce or identify such files to the extent it can locate them.

6.    Compressed Files. Compression file types (e.g., .CAB, .GZ, .RAR, .TAR, .Z, .ZIP, etc.) shall be decompressed in a manner that ensures a container within a container is decompressed into the lowest uncompressed element resulting in individual files. The container file itself shall not be produced.

7.    Searchable Text. Searchable Text must be extracted directly from the native Document unless the Document requires redaction, is an image, or is any other native electronic file that does not contain text to extract (e.g., non-searchable PDFs), in which case Searchable Text shall be created using OCR. Searchable Text shall include all non-privileged comments, revisions, tracked changes, speaker's notes and hidden text. Searchable Text from Email shall include all

7

non-privileged header information that would be visible if the Email were viewed natively including: (1) the individuals to whom the Email was directed, (2) the author of the Email, (3) any recipients copied or blind copied on such Email, (4) the subject line of the Email, (5) the date and time of the Email, and (6) the names of any attachments. Searchable Text shall not contain the Bates number or Confidentiality Designation, to the extent reasonably feasible.

8.    Time and Date. When processing ESI, EST should be selected as the time zone. Producing Parties will process ESI so as to maintain the date/time in the Document's Metadata as it was last saved or last modified by the Custodian or end user, not the date of collection or processing.

9.    Exception Files. The Parties will use commercially reasonable efforts to address Documents that present processing or production problems (including encrypted and/or password protected files) ("Exception Files"). Exception Files that are attached to produced Documents will be produced as a Bates-stamped placeholder in Image Format bearing the legend, "This Document was unable to be processed." The Parties will meet and confer regarding requests for the production of the native versions of Exception Files and/or efforts to locate passwords for specifically identified Documents protected by passwords. If the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for resolution.

10.    Hard-Copy Documents. Documents that exist only in hard-copy format are to be scanned and produced electronically in Image Format (.TIFF). Reasonable efforts are to be employed to scan the pages of Hard-Copy documents in the same order in which are maintained in the ordinary course of business; to treat pages that are stapled, clipped, or otherwise clearly appear to be part of the same Document as a single Document; and to treat Documents that clearly

appear to be separate Documents as separate Documents. Individual pages in notebooks, notepads, or journals shall be considered separate, individual Documents. For Hard-Copy Documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where reasonably practicable. Original Document orientation (*i.e.*, portrait v. landscape) should be maintained. Searchable Text shall be created using OCR.

**F.      Production Format**

1.      The Parties will produce Documents in the format described in Exhibit A to this Stipulated Order.

**G.      Documents Protected from Discovery**

1.      The production of a privileged or work-product-protected Document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected Documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding, in any federal court-mandated arbitration proceeding, or in any foreign proceeding. A Producing Party may assert privilege or protection over produced Documents at any time by notifying the receiving Party in writing of the assertion of privilege or protection regardless of the circumstances under which they were disclosed. Information that contains privileged matter or attorney work product shall be returned immediately if requested by the Producing Party and without prejudice to the Requesting Party's right to challenge any such privilege assertion.

2.      The Producing Party shall provide the Requesting Party with a log in Excel format of the Documents withheld for privilege containing the information indicated in Federal Rule of Civil Procedure 26(b)(5), including, to the extent reasonably available, the following information:

      a.  the nature of the privilege (including work product) which is being claimed;

b. the type of document, e.g., email, letter, or memorandum;

c. the general subject matter of the document;

d. the date of the document; and

e. the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

3. In-house attorney names shall be designated with a unique ASCII symbol; outside counsel attorney names will be designated with a different unique ASCII symbol. Information to be included in the log may be generated from available Metadata so long as it is reliable and does not contain information that is privileged or protected.

4. Any information required by the log that is itself privileged may be redacted from the log, with the phrase "REDACTED FOR PRIVILEGE" appearing in place of the required information.

5. A single Document containing multiple Email messages (i.e., an Email chain) may be logged as a single entry if the entire chain is privileged. The entry should include sender and recipient information available from the metadata.

6. A Document Family (e.g., an Email and its attachments) may be logged as a single entry so long as the entire Family is privileged and the log entry accurately describes both the Parent and its attachment(s).

7. Activities undertaken in compliance with the duty to preserve information are protected from discovery under Federal Rule of Civil Procedure 26(b)(3).

8. Privilege logs shall be produced within 60 days of the substantial completion of document production.

9. Privileged information produced in this matter will be handled in accordance with Fed. R. Civ. P. 26(b)(5) and Fed. R. Evid. 502.

## H.  Non-Party Documents

1. A Party that issues a subpoena ("Issuing Party") upon any non-party shall

10

include a copy of this Order and any protective order agreed and/or entered in this litigation with the subpoena and state that the Parties in this litigation have requested that non-parties produce documents in accordance with the specifications set forth herein, to the extent reasonably feasible.

2.      If the Issuing Party receives any Documents in response to a non-party subpoena, the Issuing Party shall produce promptly to all other Parties a copy of the Documents in the form in which they were received and subject to all the procedures and protections set forth in any applicable protective order and may not use those Documents in this Action until such production has been made.

## I.      Limitation, Non-Waiver and Modification

1.      This Order applies to Documents produced on or after the date this Stipulated Order is fully executed by the Parties.

2.      Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including Metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

3.      No Producing Party intends to waive (1) any rights, protections or privileged pursuant to confidentiality, attorney-client privilege, attorney work product, United States or foreign data privacy laws, and any other privileges, protections, or objections to discovery, or (2) any objections to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

4.      This Order may be modified by a further Stipulated Order of the Parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order Re: Discovery of Electronically Stored Information," and each modified Stipulated Order will supersede the previous Stipulated Order.

11

Dated: January 29, 2026

**LAW OFFICES OF MARTIN EISENBERG**

*Martin Eisenberg*

By: _____
      MARTIN EISENBERG

      50 Main Street, Suite 1000
      White Plains, New York 10606
      (914) 682-2044

      *Attorneys for Plaintiff*
      *Three Court Master, L.P.*

**SHERMAN ATLAS SYLVESTER
& STAMELMAN LLP**

By: _____
      JOSHUA S. BRATSPIES

      1185 Avenue of the Americas, 3rd Floor
      New York, New York 10036
      (212) 763-6464

      *Attorneys for Defendant*
      *UBS AG, Stamford Branch*

This Protocol For Discovery Of Electronically Stored Information is hereby **SO ORDERED** this __2__ day of _____February_____, 2026:

_____
HON. MARGARET M. GARNETT, U.S.D.J.